# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 19-1944V
UNPUBLISHED

| | |
|---|---|
| GABRIEL MEJIAS,<br><br>     Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>     Respondent. | Chief Special Master Corcoran<br><br>Filed: November 10, 2021<br><br>Special Processing Unit (SPU); Entitlement to Compensation; Table Injury; Decision Awarding Damages; Pain and Suffering; Tetanus Diphtheria acellular Pertussis (Tdap) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*Phyllis Widman*, Widman Law Firm, LLC., Northfield, NJ, for Petitioner.

*Voris Edward Johnson*, U.S. Department of Justice, Washington, DC, for Respondent.

### RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES[1]

  On December 23, 2019, Gabriel Mejias filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that he suffered a Shoulder Injury Related to Vaccine Administration ("SIRVA") as a result of a Tetanus-Diphtheria-acellular Pertussis ("Tdap") vaccine administered to him on February 25, 2019. Petition, ECF No. 1 at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

---

[1] Although I have not formally designated this Decision for publication, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002, because it contains a reasoned explanation for my determination. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons described below, and after holding a brief hearing on entitlement and damages in this matter, I find that Petitioner is entitled compensation, and I award damages in the amount **$45,000.00**, **representing Petitioner's actual pain and suffering.**

## I.     Relevant Procedural History

As noted above, the case was initiated in December 2019. On April 30, 2021, Respondent filed his Rule 4(c) Report. ECF No. 32. Respondent specifically maintained that Petitioner had failed to satisfy the Vaccine "Act's severity requirement, or alternatively, [the Table QAI] requirement that there are no other conditions that would explain petitioner's symptoms." *Id*. at 5. Respondent further asserted that Petitioner also had not provided evidence sufficient to establish causation-in-fact under the relevant standard. *Id.* at 5-6. In an effort to expediently resolve this matter, a briefing schedule was established to address Petitioner's entitlement to compensation and, if Petitioner prevailed on entitlement, damages. ECF No. 33.

Petitioner filed his brief on July 6, 2021, arguing that he had established entitlement to compensation for an on-Table SIRVA claim, and requesting $110,000.00 in past/actual pain and suffering.[3] ECF No. 34. Respondent maintained, in his brief filed August 17, 2021, that Petitioner had failed to establish entitlement to compensation. ECF No. 35. In the event I found Petitioner entitled compensation, however, Respondent recommended that I award the lessor amount of $45,000.00 for past pain and suffering. ECF No. 35.

In September of this year, I proposed this case be set for an expedited "Motions Day" hearing on October 29, 2021, at which time I would decide the disputed issues based on all evidence filed to date and any oral argument from counsel. ECF No. 36. The parties agreed, and the hearing took place on October 29, 2021. ECF No. 38; Minute Entry dated November 3, 2021.[4] After the argument, I orally ruled on Petitioner's entitlement to compensation and made a damages determination as well. This Decision memorializes those findings/determinations.

---

[3] While Petitioner's brief was not explicit that this request was *solely* for his past pain and suffering, it was confirmed at the October 29, 2021 hearing, because he at that time made a further request for $20, 000.00 in future pain and suffering.

[4] The transcript of the October 29, 2021 Hearing in this case was not filed as of the date of this Decision, but my oral ruling set forth in that transcript is incorporated by reference herein.

2

## II.    Factual Findings and Ruling on Entitlement

### A.  Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[5] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a Tdap vaccine. 42 C.F.R. § 100.3(a)(II)(C). The criteria establishing a SIRVA under the accompanying QAI are as follows:

---

[5] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

### B. Factual Findings Regarding Severity

In order to state a claim under the Vaccine Act, a petitioner must establish the "severity" requirement demonstrating that the vaccinee has either:

(i) suffered the residual effects or complications of such illness, disability, injury, or condition for more than 6 months after the administration of the vaccine, or (ii) died from the administration of the vaccine, or (iii) suffered such illness, disability, injury or condition from the vaccine which resulted in inpatient hospitalization and surgical intervention.

Section 11(c)(1)(D). Respondent's primary objection to entitlement is based on his assertion that Petitioner cannot establish more than six months of sequela of his alleged SIRVA.

After consideration of the complete record,[6] I find that Petitioner has offered preponderant evidence to establish that he more likely than not suffered the residual effects of his SRIVA for more than six months. My finding is based on the filed medical records, affidavits, testimony, Respondent's Rule 4 Report, the parties' briefing, and additional evidence filed. Specifically, I note:

- On February 27, 2019, two days after Petitioner's vaccination, Petitioner presented to Rockaway Walk In Care and was evaluated by Aadya Sharma, MD for a complaint of left arm pain for two days. Ex. 5 at 39.

- Petitioner reported at this time that he was "unable to move arm." Ex. 5 at 39. His pain purportedly began the same night he received his vaccination. *Id.* He stated that he had "been taking ibuprofen and it has not improved. He went to work all day today. He said since Monday night he is unable to lift his arm from shoulder. He states he has weakness and pain. He came in today only because his wife is concerned. He said he went to work yesterday and used his right hand for work." *Id*.

- On exam, Petitioner displayed "tenderness to palpation" and "[d]ecreased ROM of shoulder joint secondary to pain." Ex. 5 at 40. Dr. Sharma prescribed a lidocaine patch, naproxen and referred Petitioner to orthopedic surgery. *Id*. A note was provided for Petitioner's workplace. *Id.* at 41.

- On March 7, 2019, ten days post-vaccination, Petitioner presented to orthopedist, Rehan Shamin, MD, for left shoulder pain. Ex. 4 at 1. Petitioner reported pain level of 3/10 at that time and 6/10 with activity. *Id.* He stated he woke up the morning after his Tdap shot with pain. *Id.* Petitioner reported the pain was "sharp and throbbing" and "[m]oderately alleviated by Tylenol and Naproxen." *Id.*

- On exam Petitioner's strength was normal, but his left shoulder was found to have limited range of motion and a positive impingement. Ex. 4 at 2. Dr. Shamin indicated that Petitioner's "[e]xam [was] consistent with rotator cuff tendinitis, but it is unclear how exactly this would have happened." *Id.* Petitioner's naproxen prescription was refilled, and physical therapy was recommended. *Id.* The administration of a steroid injection to treat Petitioner's shoulder pain was discussed, but Petitioner was noted to be "understandably apprehensive about getting more injections." *Id.* Petitioner was advised to follow-up in three weeks, and an MRI was planned if there was no improvement. *Id.*

---

[6] For the purpose of brevity, I do not summarize and/or address all records, testimony, or arguments put forward.

- Several months later, Petitioner presented to Rockaway Walk-In Care for two unrelated urgent care visits in June 2019. These visits were in regard to symptoms of conjunctivitis, gastroenteritis, upper respiratory infection and strep throat. *See e.g.*, Ex. 5 at 5-36. Petitioner's shoulder pain was not discussed at these visits.

- Eight months thereafter, on November 7, 2019, Petitioner was seen by a different orthopedist, Steven Sclafani, MD, for left shoulder pain. Petitioner again reported that he "developed severe pain and swelling of the left shoulder" following his Tdap vaccination in February 2019. Ex. 7 at 4. Petitioner stated that his "symptoms have been severe with pain and limited motion of the shoulder. The motion is improved somewhat but the pain is still severe in the morning." Ex. 7 at 4. On exam, Petitioner exhibited positive findings and was assessed by Dr. Sclafani as "[s]tatus post injection of left shoulder with development of adhesive capsulitis left shoulder." Ex. 7 at 7. He was referred to physical therapy and for an MRI exam. *Id.*

- On December 23, 2019, an MRI exam of Petitioner's left shoulder was conducted. Ex. 9 at 1-2. The "Reasons for Exam" included "[s]houlder pain, rotator cuff tear/impingement suspected [and Patient] had injection l[eft] shoulder." *Id.* at 2. The MRI findings included: mild insertional tendinosis of the supraspinatus tendon; moderate insertional tendinosis of the infraspinatus tendon without tear; trace fluid seen in the subacromial subdeltoid joint; mild acromioclavicular joint arthrosis; trace glenohumeral joint effusion present; and a small signal abnormality at the posterior inferior labrum for which a small tear was suggested. Ex. 9 at 1.

- On January 7, 2020, Petitioner followed up with Dr. Sclafani to review his MRI. Petitioner's chief complaint at this visit was noted to be left shoulder pain. Ex. 8 at 7. Dr. Sclafani noted that Petitioner "did have an injection a year ago and he feels that the injection start[ed] his symptoms." *Id.* Dr. Sclafani assessed Petitioner with left shoulder capsulitis and recommended a course of physical therapy and follow-up treatment in three months as needed. *Id.* at 9.

No further treatment records were filed. However, Petitioner filed two personal affidavits, and the affidavit of his wife, in support of his claim. Ex 2; 10-11. Petitioner explained in his statement that he did not seek treatment for his shoulder between March and November 2019 because he is the sole provider for his family and could not afford to take time off of work which would result in a loss of income and possibly the resultant loss of the family home. Ex. 10 ¶5. Petitioner further stated that during that time, his pain was decreasing, and he hoped "it would just go away." Ex. 10 ¶6. Additionally, Petitioner explained that he treated with "naproxen approximately every other day" and his cousin, a physical therapist assistant, provided him home exercises. Ex. 10 ¶7.

6

Respondent argues that if Petitioner "[h]ad sought the appropriate treatment," his shoulder pain following his vaccination likely would have resolved. ECF No. 32 at 5. However, the medical records above demonstrate that, notwithstanding an eight-month gap in treatment, Petitioner still suffered the residual effects of his shoulder injury more than six months following the February 25, 2019 vaccination. Petitioner's medical records from November 2019 through January 2020 (discussed above) link his reported shoulder pain at that time back to his February 2019 Tdap vaccination.

Accordingly, I decline to find that these later symptoms were instead caused by Petitioner's failure to attend physical therapy or his continued work as an auto body repair technician. While it is possible that these factors impacted Petitioner's symptoms, there is no evidence that Petitioner's later shoulder symptoms and exam findings were caused by these factors. This record thus supports six months of severity – although (as discussed below) the treatment gap bears on the quantum of pain and suffering damages to be awarded.

### C. Factual Findings Regarding QAI Criteria for Table SIRVA

After a review of the entire record, including Respondent's Rule 4 Report and the parties' briefs, I find that Petitioner has preponderantly satisfied the QAI requirements for a Table SIRVA. The medical records and affidavits filed in this case are hereby incorporated by reference.

1. **Prior Condition**

The first QAI requirement for a Table SIRVA is lack of a history revealing problems associated with the affected shoulder which were experienced prior to vaccination and would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i).

Respondent does not dispute Petitioner has met the first requirement under the QAI for a Table SIRVA. Additionally, I do not find any evidence that Petitioner suffered a pre-vaccination history of problems that would explain his post-vaccination shoulder symptoms. Accordingly, I find that Petitioner has met this first criterion to establish a Table SIRVA.

2. **Onset of Pain**

A petitioner alleging a SIRVA claim must also show that he experienced the first symptom or onset within 48 hours of vaccination (42 C.F.R. § 100.3(a)( II)(C)), and that his pain began within that same 48-hour period (42 C.F.R. § 100.3(c)(10)(ii) (QAI criteria)).

Respondent does not dispute Petitioner has met this requirement. Additionally, I find that Petitioner's medical records establish that he suffered the first symptoms or onset of his shoulder pain within 48 hours of his Tdap vaccination. *See, e.g.*, Ex. 4 at 1, Ex. 5 at 39. Accordingly, I find that Petitioner has met this criterion to establish a Table SIRVA.

### 3. Scope of Pain and Limited ROM

Respondent has not contested that Petitioner meets this criterion. In addition, the medical records document pain and limited range of motion only in Petitioner's left shoulder following his Tdap vaccination. *See, e.g.*, Ex. 4 at 1-2, Ex. 5 at 39-40, Ex. 7 at 7. I thus find that Petitioner has demonstrated by a preponderance of the evidence that his pain and reduced range of motion were limited to the shoulder in which the intramuscular Tdap vaccine was administered.

### 4. Other Condition or Abnormality

The last QAI criteria for a Table SIRVA states that "[n]o other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy)." 42 C.F.R. § 100.3(c)(10)(iv).

Respondent argues that Petitioner's failure to attend physical therapy and continued work as an auto body repair technician could have caused his symptoms observed by Dr. Sclafani and MRI findings noted the following month. ECF No. 32 at 5; ECF No. 35 at 5. As discussed above, I find that Petitioner's later medical records from November 2019 through January 2020 link his reported shoulder pain at that time back to his February 2019 Tdap vaccination. Further, I do find that failure to attend physical therapy or continuing one's occupation as an auto body repair technician constitutes a "condition or abnormality . . . that would explain the patient's symptoms." Although, these choices may have impacted the ultimate course of Petitioner's injury, it is speculative to imagine how. As Petitioner's counsel pointed out in oral argument, some Petitioners do not see improvement in their shoulder symptoms despite physical therapy. Accordingly, I do find that there is evidence of any other condition or abnormality in the medical records that would explain Petitioner's post-vaccination symptoms.

### D. Other Requirements for Entitlement

As stated in the previous section, I find that the onset of Petitioner's left shoulder pain was within 48 hours of vaccination. *See* 42 C.F.R. § 100.3(c)(10)(ii) (setting forth this QAI requirement). This finding also satisfies the requirement that the first symptom or manifestation of onset occur within the time frame listed on the Vaccine Injury Table. 42

C.F.R. § 100.3(a)(II)(C) (listing a time frame of 48 hours for a Table SIRVA following receipt of the Tdap vaccine). Therefore, Petitioner has satisfied all requirements for a Table SIRVA and is entitled to a presumption of causation.

Even if a petitioner has satisfied the requirements of a Table injury or established causation-in-fact, however, he or she must also provide preponderant evidence of the additional requirements of Section 11(c), i.e. receipt of a covered vaccine, residual effects of injury lasting six months, etc. *See generally* § 11(c)(1)(A)(B)(D)(E). But those elements are established or undisputed. Petitioner is entitled to compensation in this case.

### III. Damages

#### A. Legal Standards for Damages Awards

In another recent decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections II and III of *Berge v. Sec'y Health & Human Servs.*, No. 19-1474V, 2021 WL 4144999, at *1-3. (Fed. Cl. Spec. Mstr. Aug. 17, 2021).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. [7]

#### B. Appropriate Compensation for Pain and Suffering

In this case, Mr. Mejias's awareness of his injury is not disputed, leaving only the severity and duration of that injury to be considered. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the same record relied upon to determine entitlement. I have also considered prior awards for pain and suffering, in both SPU and non-SPU SIRVA cases, and drawn upon my experience adjudicating these cases. However, my determination is ultimately based

---

[7] *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

9

upon the specific circumstances of this case.

The record establishes that Petitioner's shoulder pain was initially fairly severe, prompting him to return to seek care from Rockaway Walk-In Care only two days after his vaccination with a complaint of left arm pain for the prior two days. Ex. 5 at 39. Petitioner was "unable to move arm." *Id.* Petitioner reported that despite taking ibuprofen his left shoulder pain was not improved and that he was "unable to lift his arm from shoulder." Ex. 5 at 39. On exam, Petitioner displayed "tenderness to palpation" and "decreased ROM of shoulder joint secondary to pain." *Id.* at 40. A lidocaine patch and naproxen were prescribed, and Petitioner was referred to orthopedic surgery. *Id.* A note was provided for Petitioner's workplace. *Id.* at 41. Approximately a week later, or ten days after his vaccination, Petitioner sought treatment for his left shoulder pain from orthopedist, Rehan Shamin, MD. Ex. 4 at 1. Petitioner reported pain of 3/10 at that time and 6/10 with activity. *Id.* Petitioner reported the pain was "sharp and throbbing" and "moderately alleviated by Tylenol and Naproxen." *Id.* Petitioner declined a steroid injection, as he was "apprehensive about getting more injections." *Id.* at 2 Dr. Shamin refiled Petitioner's naproxen prescription and recommended physical therapy. *Id.* Petitioner was advised to follow-up in three weeks and an MRI would be ordered if there was no improvement. *Id.*

Thereafter, however, Petitioner sought no formal medical care for his left shoulder for eight months, when he saw orthopedist, Steven Sclafani, MD, on November 7, 2019. Petitioner now reported a pain level of 4 out of 10 in his patient questionnaire, with more severity in the morning and some limited range of motion. Ex. 7 at 4, 16. Dr. Sclafani's examination found positive findings and he assessed Petitioner with "[s]tatus post injection of left shoulder with development of adhesive capsulitis left shoulder." *Id.* at 7. Dr. Sclafani recommended Petitioner undergo an MRI exam and "physical therapy to try to regain motion." *Id.* Petitioner underwent an MRI[8] on December 23, 2019 and followed up with Dr. Sclafani on January 7, 2020. Dr. Sclafani assessed Petitioner again with left shoulder capsulitis and recommended physical therapy and follow-up in three months as needed. Ex. 8 at 9. Petitioner did not engage in any further medical treatment for his injury. Thus, the treatment course for this SIRVA was fairly mild.

Also bearing upon the pain and suffering sum to be awarded are Petitioner's sworn affidavits, and that of his wife. As discussed above in my severity ruling, Petitioner states in his affidavits that he was unable to take time away from work due to the associated reduction of income as he was the sole provider for his family. Ex. 2 ¶12; Ex. 10 ¶5. Petitioner further states that he could not afford to pay the co-payments for physical

---

[8] The MRI findings included: mild insertional tendinosis of the supraspinatus tendon; moderate insertional tendinosis of the infraspinatus tendon without tear; trace fluid seen in the subacromial subdeltoid joint; mild acromioclavicular joint arthrosis; trace glenohumeral joint effusion present; and a small signal abnormality at the posterior inferior labrum for which a small tear was suggested. Ex. 9 at 1.

therapy. Ex. 2 ¶16. Additionally, Petitioner explains in his supplemental affidavit that his cousin, a physical therapist assistant, provided him with home exercises. Ex. 10 ¶7. Petitioner and his wife's affidavits also describe the pain and suffering associated with the limitations he experienced as a result of his SIRVA, including: difficulty sleeping, significant work challenges, difficulties preforming household chores (such as carrying groceries), caring for and playing with his children and engaging in hobbies (such as playing basketball or working on house projects). Ex. 2 ¶¶ 10, 13, 15; Ex. 11 ¶ 9.

Although Petitioner's pain appears to have initially been severe enough to cause him to seek immediate treatment, thereafter Petitioner sought formal medical treatment on only five occasions over the course of approximately ten and a half months, including an eight-month gap in treatment. Moreover, Petitioner's formal treatment was very conservative, including a lidocaine patch and the medications ibuprofen and naproxen. He underwent an MRI exam, but he did not engage in physical therapy, receive steroid injections, or undergo surgery. Such interventions in my experience are taken by Petitioners with more severe SIRVA injuries. Additionally, these interventions (physical therapy, surgery, and steroid injections) are often quite painful and extensive, justifying higher awards.

While I credit Petitioner's affidavit testimony explaining the financial constraints he faced which he represents prevented him from seeking additional treatment, I note that petitioners living with particularly persistent pain will more often than not seek far more treatment than is reflected in this case. And it is reasonably inferred from treatment lapses or gaps that the severity of the SIRVA at issue was somewhat lower. *See, e.g.*, *Dirksen v. Sec'y of Health & Human Servs.*, No. 16-1461V, 2018 WL 6293201, at *9-10 (Fed. Cl. Spec. Mstr. Oct. 18, 2018) (treatment gaps are "a relevant consideration in determining the degree of petitioner's pain and suffering")(citations omitted). Accordingly, the overall facts of this cased support an award lower than that requested by Petitioner.

Petitioner argues in his brief that his case is comparable to *Smith v. Sec'y of Health & Human Servs.*, No. 19-745V, 2021 WL 2652688 (Fed. Cl. Spec. Mstr. May 28, 2021) (awarding $125,000.00 for actual pain and suffering),[9] but requests a lower award of $110,000.00 for his past pain and suffering. However, I note that the *Smith* case involved a petitioner who underwent surgical intervention for her shoulder injury and thus is not a

---

[9] I note that Petitioner also cited three cases involving awards of pain and suffering made pursuant to the parties' agreed upon Proffer by Respondent, or Stipulation. As I have discussed in other decisions, however, I do not find decisions resolved pursuant to Proffers and Stipulations to be nearly as persuasive as *reasoned* decisions. *Smith v. Sec'y of Health & Human Servs.*, No. 19-745V, 2021 WL 2652688, at *3 (Fed. Cl. Spec. Mstr. May 28, 2021). Additionally, Petitioner cited a number of cases at oral argument in support of his proposed award, but they were not first cited in his briefing (and Petitioner had ample opportunity to do so).

good comparable to Petitioner's case. Overall, Petitioner's comparable cases do not provide a reasonable range for his pain and suffering award.

Respondent, by contrast, cites *Dagen v. Sec'y of Health & Human Servs.*, No. 18-0442V, 2019 WL 7187335 (Fed. Cl. Spec. Mstr. Nov. 6, 2019) (awarding $65,000.00 for actual pain and suffering) but argues the facts of the instant case support a lower award of $45,000.00. I agree with Respondent, although I find that *Ramos v. Sec'y Health & Human Servs.*, No. 18-1005V, 2021 WL 688576 (Fed. Cl. Spec. Mstr. Jan. 4, 2021) (awarding $40,000.00 for actual pain and suffering) is an even better comparable. While the *Ramos* petitioner did undergo physical therapy (unlike Mr. Mejias), this case does establish an initially high severity of pain, sufficient for Petitioner to seek immediate medical care following his vaccination (while the *Ramos* petitioner delayed treatment). The instant case also involves the receipt of an MRI with positive findings– suggesting a slightly higher award is justified herein.

I do not, however, find that a future pain and suffering component is appropriate. While the record does not allow the conclusion that Petitioner had fully recovered from his SIRVA after his final orthopedic appointment on January 7, 2020, no further medical records have been filed, and there is no evidence that Petitioner suffered a permanent injury (a factor which I typically give great weight when evaluating a request for a future component). Accordingly, Petitioner's award is limited to past pain and suffering.

## IV. Conclusion

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $<u>45,000.00</u>, representing compensation for actual pain and suffering.**

This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[10]

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u><br>
Brian H. Corcoran<br>
Chief Special Master

---

[10] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.